

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-23-2003

# Gross v. St Paul Fire

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-3177

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Gross v. St Paul Fire" (2003). *2003 Decisions*. Paper 442.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/442

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-3177

SHELDON GROSS; DEBORAH GROSS;
DURABLE GM PRODUCTS, INC.; FINCORE
INDUSTRIES, INC.; 999361 ONTARIO, INC.

Appellants

v.

ST. PAUL FIRE AND MARINE INSURANCE CO.;
BRECKLES INSURANCE BROKERS LIMITED

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 01-cv-01903)
District Judge: Honorable Berle M. Schiller

Submitted Under Third Circuit LAR 34.1(a)
April 24, 2003

Before: SCIRICA*, Chief Judge, AMBRO and GARTH, Circuit Judges

(Opinion filed:   June 23, 2003)

OPINION

* Judge Scirica began his term as Chief Judge on May 4, 2003.

AMBRO, Circuit Judge

In this appeal we consider the interpretation of an insurance contract. We affirm the District Court's conclusion that the terms of the contract between Fincore Industries, Inc. ("Fincore") and St. Paul Fire and Marine Insurance Company ("St. Paul") unambiguously limit Fincore's right to recovery to $2.6 million and that St. Paul is therefore entitled to summary judgment in its favor.

**1.      Facts and Procedural History**

Sheldon Gross is the Chief Executive Officer of Fincore, a Canadian corporation that provides specialized paint services. In May 1997, Gross approached Breckles Insurance Brokers ("Breckles") in search of business insurance for Fincore. Breckles negotiated a one-year policy for Fincore with St. Paul beginning June 18, 1997. The business interruption coverage in the policy provided "for loss of gross profits and extra expense because of the suspension of your operations." The policy's Limits of Coverage provision stated that "[t]he most [St. Paul will] pay for loss in any event is the limit shown in the Coverage Summary." The Coverage Summary limit was $2.6 million. The business indemnity period was defined by the policy as "the length of time that: begins with the date of direct physical loss due to a covered cause of loss at the covered location, when the gross profit of [the] business is reduced; and ends not later than 12 months thereafter."

Fincore renewed its policy with St. Paul in 1999, adding an endorsement that

increased its business profits indemnity period from 12 to 24 months. St. Paul required Fincore to complete a Loss of Profits Worksheet. Sid Persaud, Fincore's Chief Financial Officer, completed that worksheet and provided the form to Breckles. Persaud testified at his deposition that he told Breckles that Fincore wanted $2.6 million in coverage for each of the two years in the business indemnity period. St. Paul denies that this request was made, or if it was, that it knew of the request. The policy noted that the "Business Income – Profits Indemnity Period is: 24 months" and the business interruption premium increased from $4,700 to $6,632. Fincore renewed the policy, under the same terms, for June 1999-June 2000.

In April 2000, Fincore suffered losses as a result of a fire at its Ontario, Canada plant. Over the next twenty-four months, Fincore lost over $5.2 million as a result of the interruption in business, largely from lost business contracts and lost rental monies. Fincore made a claim to St. Paul for $5.2 million, as under its reading of the policy it was entitled to $2.6 million in business interruption loss coverage for each of the two years in the business indemnity period. St. Paul paid Fincore only $2.6 million, as it claimed the policy capped coverage at that amount for the entire two-year period.

Fincore, Gross and other named insureds under the policy (hereinafter "plaintiffs") sued St. Paul to recover the $2.6 million in unpaid coverage to which they argued they were entitled. Upon the order of the District Court, plaintiffs and St. Paul filed cross-motions for summary judgment. The District Court granted St. Paul's motion for

3

summary judgment and dismissed the case. This appeal followed.[1]

As we have instructed on other occasions, it is not Hoyle for the District Court to enter an order that grants summary judgment and dismisses the complaint. See, e.g., Cheminor Drugs, Ltd. v. Ethyl Corp., 168 F.3d 119, 121 n.2 (3d Cir. 1999). Therefore, we have reviewed the District Court's order as a grant of summary judgment rather than as a grant of a Rule 12(b)(6) motion.

## 2.    Discussion

Plaintiffs argue that the District Court made various errors when ruling on the cross-motions for summary judgment. The Court concluded that Pennsylvania choice of law rules required it to apply the law of Canada to interpret the contract. Plaintiffs contend that this was error and that Pennsylvania law should have been applied. We are in agreement with the parties and with the District Court[2] that both Canadian and Pennsylvania law are substantively the same. That being so, we need not address any argument relating to choice of law.[3]

---

[1]We have jurisdiction under 28 U.S.C. § 1291.

[2]"As indicated above, though, even if I did consider the application of Pennsylvania law, this result would have been the same." See District Court Op. at 8, reproduced in Appellant Fincore's brief at App. Vol. I at 10.

[3]We note in passing that the District Court considered Fincore's choice-of-law argument waived. We leave for another day further discussion whether the failure to raise a choice-of-law issue before the District Court results in waiver of that issue before this Court. Compare Parkway Baking Co., Inc. v. Freihofer Baking Co., 255 F.2d 641, 646 (3d Cir. 1958) with Nealy v. Club Med Mgmt. Servs., 63 F.3d 166, 180 n.10 (3d Cir. 1995) (en banc).

Plaintiffs' main contention, of course, is that the District Court should have interpreted the contract to mean that Fincore is entitled to $2.6 million in business interruption coverage per year. As plaintiffs note, if a provision is ambiguous, that provision is interpreted to "giv[e] effect to the reasonable expectations of the parties." Reid Crowther & Partners Ltd., [1993] S.C.R. 252. In addition, the contra proferentem doctrine provides that an ambiguous provision is to be construed against the drafting party – here the insurer. Id. Plaintiffs argue that the District Court erred in not applying these principles to the insurance contract in this case and, had it done so, it would have concluded that Fincore was entitled to $5.2 million from St. Paul.

These principles of contract interpretation apply only if the terms of the contract are ambiguous. The reasonable expectations of an insured are immaterial if the policy limitations are plain; extrinsic evidence becomes meaningful only if the contract terms are ambiguous. Id. The District Court concluded that the relevant contract provisions were not ambiguous, and therefore that extrinsic evidence was irrelevant. We agree. As the District Court noted, Fincore's policy "unambiguously caps lost business income coverage at $2.6 million." The "Limits of Coverage" provision of the contract states that the most St. Paul will "pay for loss in any one event is the limit shown in the coverage summary." The Coverage Summary explicitly caps business income profits at $2.6 million for the term of the policy.

As further argument, plaintiffs point out that the policy and the other documents

they deem relevant demonstrate that Fincore, when renewing its policy, increased the indemnity period from a 12-month term to a 24-month term. As defined in the policy, the indemnity period is the period during which the insured can accrue compensable lost income. The amendment to the indemnity period does not alter the coverage limit set forth in the Coverage Summary, either explicitly or implicitly. That amendment means that, if as a result of the fire, Fincore suffered damages of $1.2 million during the first 12 months after the fire and $1.4 million during the second 12 months after the fire, under the original indemnity period Fincore would be entitled to recover only $1.2 million. Under the new indemnity period, Fincore would be entitled to recover the entire $2.6 million. The amendment does not mean, however, that Fincore is entitled to $5.2 million. Absent an amendment to the Coverage Summary, we cannot avoid the conclusion that the language of the policy unambiguously limits Fincore's recovery for business interruption as a result of any one event to $2.6 million.

Nor are we persuaded by an "examination of external signs and objective indicia" to conclude that the language of the policy is ambiguous despite its apparent clarity. Northbrook Ins. Co. v. Kuljian Corp., 690 F.2d 368, 372 n.5 (3d Cir. 1982). We agree with the District Court that a reasonable insured would not expect this contract to commit to $5.2 in lost business income coverage. As the District Court persuasively reasoned, the only party to whom Fincore even argues it indicated any desire for

6

increasing the coverage limits is Breckles.[4]  Further, the worksheet that plaintiffs argue

provides proof of their desire for increased coverage shows only that they wished to

extend the period during which they could accrue losses, not that they wished to extend

the maximum amount recoverable.

*   *   *

Because we conclude that the insurance policy unambiguously caps coverage for

Fincore at $2.6 million, we affirm the decision of the District Court to grant summary

judgment to St. Paul.

---

TO THE CLERK:

Please file the foregoing Opinion.


By the Court,


  /s/ Thomas L. Ambro
   Circuit Judge

---

[4]Breckles was an independent broker with whom Fincore dealt.  Fincore had amended its complaint on November 28, 2001 to add Breckles as a defendant, though it was subsequently dismissed for lack of personal jurisdiction.  But both parties subsequently stipulated that Fincore would not pursue its claim against St. Paul – a claim that was based on the theory that Breckles was St. Paul's agent – and in exchange St. Paul dismissed its cross-claim against Breckles.  See Supp. App. at 366.